UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

JOSEPH HARVEY,

    Plaintiff,                           CASE NO.: 15-24012-CIV-ALTONAGA

    vs.

UNITED STATES OF AMERICA, et al.,

    Defendant.
_____/

### CONSOLIDATED MOTION TO DISMISS COMPLAINT ON BEHALF OF DEFENDANTS THOMAS WATTS-FITZGERALD, CLAUDIA ANGEL, LEONARDO SPITALE, JAN SMITH AND ELAINE SOMMA

Defendants Thomas Watts-Fitzgerald, Claudia Angel, Leonardo Spitale, Jr., Jan Smith and Elaine Somma hereby file this Consolidated Motion to Dismiss Plaintiff Joseph Harvey's ("Harvey" or "Plaintiff") Complaint pursuant to this Court's Orders and Federal Rules of Civil Procedure 12(b)(6), 8 and 9, for failure to state a claim upon which relief can be granted and state:

The Complaint alleges that the Defendants jointly engaged in a Racketeering Influenced Corrupt Organization (RICO) conspiracy and a variety of other disparate claims against some of the individual defendants.

The Defendants respectfully submit that the RICO claim must be dismissed because:

1.      The Complaint fails to meet the heightened pleading requirements applicable to stating a RICO conspiracy claim.

2.      The Complaint fails to allege the essential elements of a civil RICO claim because it does not show: (a) the Defendants were part of a criminal enterprise or organization; (b) any of them operated or managed an unlawful enterprise; (c) any of them engaged in predicate acts of racketeering; (d) they participated in continuing unlawful conduct; or (e) their alleged conduct was the proximate cause of the Plaintiff's alleged injuries.

3.      The complaint against the individual Defendants is barred by either absolute or qualified immunity.

1

Additional grounds for dismissal as to the claims against each individual defendant are discussed more fully below.

## INTRODUCTION

### Background-Criminal Proceedings

This litigation arises from the arrest, trial and conviction of Defendant Harvey and his spouse Anja Kannell ("Kannell") for their participation in a scheme to defraud various disaster relief agencies. Both were sentenced to 159 months of imprisonment for multiple counts of mail fraud, wire fraud, access device fraud and aggravated identity theft. *See United States v. Kannell*, 545 F. App'x 881, 883 and 888 (11th Cir. 2013).

### Civil Litigation

After his and his wife's convictions, Harvey filed this civil action (DE1). His initial complaint was dismissed and the majority of his claims rejected in two appeals to the Eleventh Circuit (*Harvey v. United States*, 681 F. App'x 850 (11th Cir. 2017) ("*Harvey I*") and *Harvey v. United States*, 770 F. App'x 949 (11th Cir. 2019) ("*Harvey II*")).

In *Harvey II*, however, the appellate court reversed this court's dismissal of a portion of Harvey's complaint based upon issue preclusion.[1] The court explained that "[i]n *Kannell*, this Court determined the district court did not err when it admitted into evidence the items recovered from Harvey's storage unit….It also determined the government did not violate Kannell's Fourth Amendment rights when it purchased items from a private person…. As the government concedes, Harvey's Fourth Amendment claim is entirely different than the one in *Kannell*. Harvey argues Angel violated his Fourth Amendment rights when she prevented entry into the storage unit between October 22, 2011 and January 17, 2012. He does not argue, as Kannell did previously, that the government's seizure of the items through the auction violated his Fourth Amendment rights." *Harvey v. United States*, 770 F. App'x 949, 954 (11th Cir. 2019).[2]

---

[1] The Eleventh Circuit's holding was necessarily limited to claims against the government, as these defendants had not yet been served and could not participate in the appeal.

[2] In *Harvey II*, the appellate court noted that "[i]t appears from Harvey's amended complaint that he also raised a RICO claim. The magistrate judge did not address this claim in its second report and recommendation. Neither did the district court address in its order adopting the magistrate judge's recommendation to dismiss Harvey's complaint. The district court should therefore consider this claim on remand." *Harvey II*, 770 F. App'x at 954 n.8.

Upon remand, this Court directed Harvey to "file a single combined complaint, which will govern the case moving forward." (DE66.)[3]   The Court later reminded Harvey "to file a single, consolidated amended complaint…[because]…[a]t present there is no operative complaint for Defendants to respond to." (DE66, 68.)  On June 4, 2019, Harvey filed a complaint as directed (DE69), and these Defendants were thereafter served.  On September 18, 2019, Harvey filed an Amended Compliant (DE122) (the "Complaint"), which is the presently operable pleading.

## I.      ALLEGATIONS OF THE COMPLAINT APPLICABLE TO ALL DEFENDANTS

The Plaintiff makes a wide variety of disparate allegations ranging from illegal searches to the inadvertent loss of a Grand Jury transcript and the failure to pay a storage rental fee.  Only the allegations of a RICO conspiracy are applicable to all defendants. The allegations unique to each individual defendant are addressed below.

The RICO conspiracy claim can be briefly summarized.  The Plaintiff alleges that he and his wife were convicted and otherwise damaged as a result of a conspiracy involving a U.S. Postal Inspector, Claudia Angel, an Assistant U.S. Attorney, Thomas Watts-Fitzgerald, his CJA appointed defense attorney, Leonardo Spitale, his spouse Anja Kannell's public defender, Jan Smith, an official court reporter, Elaine Somma, and two unnamed Bureau of Prison Employees (since dismissed).  He alleges that Inspector Angel participated in the RICO conspiracy by violating his rights under the Fourth Amendment in connection with the search and seizure of a car, storage unit and three laptops (*Complaint* ¶¶ 10-21) and converted the property seized to his own use.  *Id.* ¶¶ 13-15. He alleges that AUSA Watts-Fitzgerald "furthered and facilitated" the conspiracy by covering up Angel's conduct and using the seized evidence to convict him.  *Id.* ¶ 22. Harvey alleges that Public Defender Smith "facilitated" the conspiracy by failing to raise objections to the searches and seizures. *Id.*  ¶ 23. He alleges that his CJA attorney, Spitale, "did basically the same as Smith." *Id.*  ¶ 24.  As to Court Reporter Somma, the Complaint alleges that AUSA Fitzgerald told the court that Somma "destroyed" a portion of a grand jury transcript "even though the system she uses is full of redundancys" [sic] and that "Somma has the answers as to

---

[3] This Order was also filed in Case Number 15-cv-24438 at Docket Entry 81.  The filing in this case bears that docket stamp but is entered under Docket Entry 66 in this case.  Because the Order also closed Case Number 15-cv-24438 and consolidated that matter into this case, the Docket Entry in this matter is utilized for citation.

whether she aided and abetted these schemes or is she an innocent bystander being lied upon." *Id.* ¶25.

## II.      LEGAL ANALYSIS

### A.  Pleading Standards

Rule 8(a) requires a plaintiff to allege "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citation and alteration omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A plaintiff's "substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed.R.Civ.P. 9(b)'s heightened pleading standard, which requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *American Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283 (11th Cir. 2010). The Complaint falls far short of the heightened pleading standard applicable to the Plaintiff's RICO claim, as demonstrated below with respect to each defendant.

The Complaint also seeks to allege a RICO count under Florida's version of the RICO statute.  "The Florida RICO statute was largely modeled after the Federal RICO Statute….The "enterprise" and "pattern of racketeering activity" elements of RICO are almost identical to the Federal RICO provisions….Given the similarity of the state and federal statutes, Florida courts have looked to the federal courts for guidance in construing RICO provisions. *Gross v. State*, 765 So. 2d 39, 42 (Fla. 2000) (internal citations omitted).  Because Harvey's complaint alleges both state and federal RICO counts and those claims are based upon identical allegations, they should be considered together. *See e.g.  Kidwell v. Wagoner*, No. 2:09-cv-108-FtM-36-DNF, 2010 U.S. Dist. LEXIS 149225, at *20 n.4 (M.D. Fla. Sep. 10, 2010).

### B.  The RICO Claims Against All Defendants

### 1.   The Elements of a Civil RICO Claim

"The elements of a civil RICO claim under § 1962(c) are: (1) the existence of an enterprise, (2) that the enterprise affected interstate commerce, (3) that the defendants were employed by or associated with the enterprise, (4) that the defendants participated in the conduct of the affairs of the enterprise, (5) that the affairs of the enterprise were conducted through a pattern of racketeering activity, (6) that the plaintiff suffered damages, and (7) that the defendant was both the but-for and proximate cause of the damages." *Funding Metrics, LLC v. Decision One Debt Relief LLC*, CASE No. 18-81061-CIV-Bloom/Reinhart, at *5-7 (S.D. Fla. 2019), citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985); *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992) and *Ray v. Spirit Airlines*, 836 F.3d 1340, 1348 (11th Cir. 2016).

### 2.   The Complaint Does Not Allege a "Continuing Enterprise."

A claim under RICO requires proof of a continuing criminal enterprise:

> From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. . . . Section 1962(c) reinforces this conclusion and also shows that an "enterprise" must have some longevity, since the offense proscribed by that provision demands proof that the enterprise had "affairs" of sufficient duration to permit an associate to "participate" in those affairs through "a pattern of racketeering activity."

*Boyle v. United States,* 556 U.S. 938, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009).

The Complaint does not allege the existence of such a continuing enterprise.  It alleges only that a group of unaffiliated individuals, including a U.S. Attorney, two defense attorneys, a Postal Inspector, and a court reporter, conspired together on a single occasion, in the course of a criminal prosecution, to procure the Plaintiff's conviction.  There is no allegation to support the bare conclusion that these diverse individuals were part of a single enterprise with a united purpose, let alone an ongoing one. The prosecutor's purpose to secure a conviction based on the evidence provided by the Postal Inspector was hardly the same as the defense attorneys' purpose to secure an acquittal for the Plaintiff and his wife.  The reporter's only purpose was to record the proceedings, not to procure either a conviction or an acquittal.

The courts have consistently rejected similar attempts to base RICO claims on acts taken in the course of litigation. As the Eleventh Circuit stated in *Raney v. Allstate Ins. Co.,* 370 F.3d 1086 (11th Cir. 2004), "neither the threat to litigate nor the fabrication of evidence" constitute "'wrongful' [action] within the meaning of 18 U.S.C. § 1951 and therefore [can] not be a predicate act under RICO." The court relied upon its previous decision in *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002), where it explained that "prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system. Moreover, allowing such charges would arguably turn many state-law actions for malicious prosecutions into federal RICO actions." *Accord, Kim v. Kimm,* 884 F.3d 98 (2d Cir. 2018) (concluding that allegations of frivolous, fraudulent, or baseless litigation activities, such as proffering false affidavits and testimony to a state court, cannot constitute a RICO predicate act); *Snow Ingredients, Inc. v. SnoWizard, Inc.,* 833 F.3d 512 (5th Cir. 2016) (Noting that numerous cases have concluded that "actions in litigation . . . could not sustain RICO liability.").

### C. The Claims Against Individual Defendants

Before turning to the specific allegations against each Defendant, it is important to bear in mind that as individuals they have the same right to immunity under RICO as they have in a *Bivens* or Section 1983 action. *See Gonzalez v. Lee County Housing Authority,* 161 F.3d 1290, 1300 n. 34 (11th Cir. 1998), citing *Cullinan v. Abramson,* 128 F.3d 301 (6th Cir. 1997). As this Court has already noted, AUSA Watts-Fitzgerald and Public Defender Smith are entitled to absolute immunity in connection with their prosecution and defense of the Plaintiff. *Order Consolidating Cases*, D.E. 66 at 3 and cases cited therein.

The other Defendants, Angel, Spitale and Somma, are entitled to at least qualified immunity. "In order for government officials to enjoy qualified immunity, they must first establish that they were acting within the scope of their discretionary authority when the alleged wrongful acts occurred." *Melton v. Abston,* 841 F.3d 1207 (11th Cir. 2016). "Once it has been determined that an official was acting with the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate." *Id.* In this regard, the Eleventh Circuit has explained:

> First, the plaintiff must show that the official's alleged conduct violated a constitutionally protected right. Second, the plaintiff must demonstrate that the right was clearly established at the time of the misconduct. A plaintiff must satisfy both prongs of

the analysis to overcome a defense of qualified immunity. The determination of these elements may be conducted in any order.

A right is clearly established if a reasonable official would understand that his conduct violates that right. The touchstone of the "clearly established" inquiry is whether the official had "fair warning" and notice that his conduct violated the constitutional right in question.

In order for the law to be clearly established, "case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates a federal law." The Court looks to the binding precedent set forth in the decisions of the Supreme Court, the Eleventh Circuit, or the highest court of the state . . . to decide whether a right is clearly established. Typically, "[e]xact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from the pre-existing law."

### 1.   *AUSA Thomas Watts-Fitzgerald*

#### a.   *Summary of Allegations Specific to AUSA Watts-Fitzgerald*

All of the allegations against AUSA Watts-Fitzgerald involve actions he took in his official capacity as the prosecutor in the Plaintiff's criminal case.  In particular, the Plaintiff challenges the veracity of representations that defendant AUSA Watts-Fitzgerald made during a "status hearing," on January 26, 2012, to wit:  "Fitzgerald asked the court not to dismiss . . ;" "Fitzgerald had every opportunity to tell the court . . ;" "he knew about the unconstitutional and crimal [sic] actions but said nothing." (DE 69 at pp. 9-10).  Plaintiff also alleges that AUSA Watts-Fitzgerald "proceeded to trial and never told the court or the jury what happened." (DE 69 at p. 10).  Plaintiff also adds that AUSA Watts-Fitzgerald "superseded the indictment using supposed evidence that he found in the storage unit." (DE 69 at pp. 9-10).

#### b.   *AUSA Watts-Fitzgerald is entitled to absolute immunity.*

As a federal prosecutor, defendant AUSA Watts-Fitzgerald is absolutely immune from liability for his conduct in the Plaintiff's prosecution.  "Absolute prosecutorial immunity is function related.  The defendant prosecutor must show that it is 'justified for the function in question." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1142 (11th Cir. 2017) *quoting Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).  Moreover, "[a] prosecutor is immune from liability under

section 1983 for his actions 'in initiating a prosecution and in presenting the State's case,' and for actions that are 'intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976).  As a prosecutor, defendant AUSA Watts-Fitzgerald enjoys absolute immunity from the Plaintiff's allegations that he filed a superseding indictment and representations he made (or did not make) during hearings and trial.  Plaintiff's claims against Watts-Fitzgerald must be dismissed.

In addition, the claims against AUSA Watts-Fitzgerald under RICO fail to state a claim under RICO because the complaint includes no allegations that: (1) he engaged in any predicate criminal act, (2) was part of any joint enterprise, (3) had any purpose in common with the other defendants, or (4) he proximately caused the Plaintiff's alleged damages. These elements of a RICO claim are addressed in more detail elsewhere in this consolidated memorandum.

### 2. *Postal Inspector Claudia Angel*

#### a. *Inspector Angel is entitled to qualified immunity on Plaintiff's Fourth Amendment claim.*

The doctrine of qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).   "The qualified immunity doctrine means that government agents are not always required to err on the side of caution."  *Davis v. Scherer*, 468 U.S. 183, 196 (1984).   Further, because qualified immunity is an entitlement not to stand trial or face the other burdens of litigation, questions of qualified immunity must be resolved at the earliest possible stage in litigation.  *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003)(citations omitted).

Pursuant to an indictment and an arrest warrant, defendant Angel was exercising her discretionary authority when she stopped and arrested Harvey and his wife Anja Kannell. Plaintiff's vehicle, a Bentley, was subject to search incident to arrest.  After obtaining a search warrant, defendant Angel conducted a search of the plaintiff's vehicle and briefcase found in the trunk. (Bentley Search Warrant, Ex. 1).

After Plaintiff's arrest, defendant Angel received information that the Plaintiff and his wife had a public storage unit located in Pompano Beach, Florida.  She went to the location and learned that plaintiff's unit was in arrears and its contents set up for auction.  Subsequently, the auction was held on January 17, 2012 and the new owner of the contents voluntarily gave defendant Angel

items that had been in plaintiff's unit which included laptop computers and a Rubbermaid tub containing documents. (Angel Trial Testimony, Ex. 2, see p. 181).  Nydia Cedillo, Property Manager, Public Storage, confirmed that plaintiff's storage unit was in arrears and that the contents would be sold at auction (Cedillo Trial Testimony Excerpt, Ex. 3;  Public Storage Contract and Notice of Lien, Composite Ex. 6).

As well, Angel interviewed April Kannell, plaintiff's daughter, who voluntarily gave laptop computers to defendant Angel and gave consent with the password to search the contents of the computers.  Defendant Angel exercised her discretionary authority when she interviewed Kannell, obtained received three laptops and her consent to search (Trial Transcript and Kannell Trial Testimony, Ex. 4, see p. 69).  Prior to searching the laptops from Kannell, however, defendant Angel obtained a search warrant (Computer Search Warrant, Kannell laptops, Ex. 5).

Defendant Angel exercised her discretionary authority to inventory the Bentley subject to an arrest and search the Bentley and its contents pursuant to a search warrant; obtain property from plaintiff's former unit after Public Storage sold it to new owner at auction; and received laptops with password from April Kannell, defendant Angel searched contents pursuant to a search warrant.  Thereafter, the burden shifts to plaintiff to show that the grant of qualified immunity is inappropriate.  *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009).

A court is obliged to grant qualified immunity to a law enforcement officer unless the plaintiff can demonstrate: (1) he suffered a violation of a constitutional right; and (2) that the right he claims was "clearly established" at the time of the alleged misconduct.  *Huebner v. Bradshaw*, 935 F.3d 1183, 1187 (11th Cir. 2019), citing *Hope v. Pelzer*, 516 U.S. 730 (2002), and *Saucier v. Katz*, 533 U.S. 194, 201 (2001).   In *Pearson v. Callahan*, 555 U.S. at 235-36, the Supreme Court left it to the sound discretion of the judges of the lower federal courts to decide which of the two prongs should be addressed first.   In order to survive a qualified immunity defense, plaintiff must satisfy both showings.  *Maddox v. Stephens*, 727 F.3d 1109, 1120-21 (11th Cir. 2013)(citation omitted).

Plaintiff alleges that the search of his car and its contents and seizing the property from the storage facility and the three laptops from plaintiff's daughter April Kannell were in violation of the Fourth Amendment.   The Court is not bound to accept Harvey's characterization of his behavior because, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that

version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Because Plaintiff Harvey has not shown that his Fourth Amendment right was violated by defendants, the qualified immunity inquiry ends at step one. *Huebner,* 935 F.3d at 1191 ("Because Huebner hasn't shown a violation of her Fourth Amendment rights, McDonough is entitled to qualified immunity.")(footnote omitted).

### b. Civil theft and conversion are state law torts barred by the Federal Tort Claims Act.

The Plaintiff alleges that Postal Inspector Angel took possession of his property from his car and storage facility and converted it for her own use (DE 69, pp. 25-26). Plaintiff does not cite any statute upon which he relies. Defendant Angel was a federal employee acting within the scope of her employment as a United States Postal Inspector during the Harvey investigation and trial. Pursuant to 28 U.S.C. 2679(d), allegations of tort against a federal employee acting within the scope of her employment are cases against the United States. Pursuant to the Federal Tort Claims Act, 28 U.S.C. 2671 et. seq. (FTCA), "Congress waived the government's sovereign immunity with respect to private tort actions." *Roman-Cancel v. United States*, 613 F.3d 37, 41 (1st Cir. 2010).

The limited waiver is restricted, however. Most salient is the FTCA statute of limitations, 28 U.S.C. 2401(b), which provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which is was presented." Plaintiff alleges that Angel converted his property from his car and storage facility in or about 2011 and sold his property on January 2012. Plaintiff did not file timely any administrative claim with the United States Postal Service, nor did he allege that he then filed a claim within six months after he presented it to the agency to satisfy the jurisdictional requirement.

Courts must ensure that the requirements of 2401(b) six month deadline is "strictly observed" and may not infer exceptions to it. *See Phillips v. United States*, 260 F.3d 1316, 1318 (11th Cir. 2001). If a plaintiff fails to sue within this deadline, then the district court lacks subject matter jurisdiction over the complaint. *Shoff v. United States,* 245 F.3d 1266, 1267-68 (11th Cir. 2001). Since Harvey did not establish or allege that he timely filed an administrative claim, the

district court lacks subject matter jurisdiction.  Plaintiff's tort claims of civil theft and collusion whether under common law or by statute are time barred and must be dismissed.

As to the RICO claims against her, Inspector Angel joins AUSA Watts-Fitzgerald's and the other Defendants arguments that the Plaintiff has not satisfied any of the elements of a RICO conspiracy claim.

### 3.  CJA Attorney for Harvey's Wife, Leonardo Spitale

#### a.  *Summary of Allegations Specific to Attorney Spitale*

Attorney Spitale was appointed by the court to represent Harvey's wife, Kannell, in criminal proceedings against both.   Harvey previously alleged claims pursuant to *Bivens* and 42 U.S. Code § 1983 against Spitale in October 2015.  *See Harvey v. United States*, 770 Fed. Appx 949, 952 (11th Cir. 2019).  This Court dismissed Harvey's claims against Spitale with prejudice, and the Eleventh Circuit affirmed.  *Id.* at *953; *See Harvey v. United States*, 2016 U.S. Dist. Lexis 43889, *13-*14 (S.D. Fla. 2016).  In his amended complaint, Harvey alleges that Spitale violated only the RICO Act. Nonetheless, this Motion will also address Harvey's potential negligence claims.

Harvey attempts to connect Attorney Spitale to his Complaint by alleging, in a conclusory manner, that Spitale "did the same" as Public Defender Jan Smith in that they both furthered and facilitated criminal endeavors.  Compl. ¶ 14.  Harvey asserts in the Complaint that P.D. Smith facilitated criminal actions by not informing the court of what defendants did, and not asking the court for an evidentiary hearing for Fourth Amendment violations.  Compl. ¶ 13.

In fact, the existing record clearly shows Attorney Spitale raised the issue of the storage bin evidence being introduced against his client as being improper F.R.E 404 B evidence.  The court denied the motion.11CR20701 JLK ECF No. 81, 84.  Spitale also raised the issue on appeal of the suppression of the items found in the storage bin based on the 4th Amendment violation and it was denied because the storage company was a private entity and thus there was no 4th Amendment violation. *United States v. Kannell*, 545 F Appx. 881,883 (11 Cir 2013). Harvey further alleges that he had asked Smith, "what he was gonna do about the Fourth Amendment violations". *Id.*  In response to Harvey's question, P.D. Smith stated that, "I am not going against the government." *Id.*

#### b.  *Legal Analysis of Claims Against Spitale*

1. **Harvey Fails to State a Claim for Violations of RICO Against Mr. Spitale.**

Plaintiffs in a RICO action must identify and prove a pattern of racketeering activity, defined as two "predicate acts" of racketeering activity within a 10 year period. *See 18 U.S.C. §1961(5); See Fla. Evergreen Foliage*, 165 F. Supp. 2d at 1350 (S.D. Fla. 2001). The phrase "racketeering activity" is defined as including any act which is indictable under a lengthy list of criminal offenses, including the federal statutes prohibiting mail and wire fraud, obstruction of justice, and tampering with witnesses. *Id.; See 18 U.S.C. § 1961(1)*. In order for a pattern of racketeering activity to be a cognizable cause of civil RICO injury to a private plaintiff, one or more of the predicate acts must not only be the 'but for' cause of the injury, but the proximate cause as well. *See Fla. Evergreen Foliage*, 165 F. Supp. 2d at 1351 (S.D. Fla. 2001).

Harvey fails to allege in his Complaint the "two predicate acts" that Mr. Spitale engaged in that are necessary to prevail under a RICO claim. Mr. Spitale's alleged ambiguous actions were not the "but for" cause of Harvey's injury, let alone a proximate cause of his injuries. Regardless of Mr. Spitale's actions, Ms. Angel would still have caused alleged injury to Harvey by seizing the property at issue and Mr. Smith would have still allegedly facilitated the criminal endeavors. Harvey also fails to allege a pattern of alleged racketeering activity as Harvey only alleges that Mr. Spitale failed to ask for an evidentiary hearing for Fourth Amendment violations. Mr. Spitale was in fact prohibited from making a motion on behalf of Harvey since he was not his attorney. Thus, this does not equate to a "pattern of racketeering activity" as this was only one chosen action that was done in the best interest of Mrs. Kannell. Also, the complaint only alleges that he did the same as attorney Smith which is in fact impossible since Mr. Spitale was the attorney for Mrs. Kannell and not the plaintiff.

2. **This Court Previously Dismissed with Prejudice All of Harvey's Alleged 42 U.S. Code § 1983 Conspiracy Claims and Claims Pursuant to *Bivens* Against Mr. Spitale.**

Harvey had previously made 42 U.S. Code § 1983 conspiracy claims and also claims pursuant to *Bivens* against Mr. Spitale.  This Court dismissed those claims with prejudice and the Eleventh Circuit affirmed. *Harvey*, 770 Fed. Appx 949, 952.  Thus, any alleged 42 U.S. Code § 1983 conspiracy claims or claims pursuant to *Bivens* asserted against Mr. Spitale must be dismissed with prejudice.

3. **This Court Previously Ruled that Harvey Cannot Raise Any Claims on Mrs. Kannell's behalf.**

This Court has already ruled that Plaintiff is precluded from raising any claims on Mrs. Kannell's behalf and the Eleventh Circuit affirmed that decision. *Harvey,* 770 Fed. Appx 949, 952. Thus any claim asserted against Mr. Spitale on Mrs. Kannell's behalf must be dismissed.

4. **Any Claim for Negligence or Legal Malpractice by Mr. Spitale must be Dismissed as Mr. Spitale did not owe any duty to Harvey.**

Although, Harvey does not specifically allege that Mr. Spitale was negligent or committed legal malpractice in the handling of Harvey's criminal case, Harvey ambiguously places the word "negligence" on Page 1 of the Complaint. However, any claim of negligence possibly asserted against Mr. Spitale must be dismissed.

In order to sustain a negligence claim in Florida, plaintiffs must plead and prove each of the following elements of a negligence claim against a defendant: (1) existence of a duty on the part of the defendant to protect the plaintiff from the injury or damage from which he complains; (2) failure of defendant to perform that duty; and (3) injury or damage to the plaintiff arising from such failure. *See Smiley v. Court,* 243 So.2d 643, 646 (Fla. 4th DCA 1971).

As a preliminary matter, Harvey does not offer legal support in his Complaint as to the existence of a purported duty that Mr. Spitale may have owed Harvey. Moreover, attorneys owe no enforceable duty to anyone but his or her client. *See Chapman v. State, Dep't of Health & Rehab. Servs.*, 517 So. 2d 104, 106 (Fla. 3d DCA 1987). An attorney's liability for negligence in the performance of his or her professional duties is limited to clients with whom the attorney shares privity of contract. *See Espinosa v. Sparber*, 612 So. 2d 1378, 1379 (Fla. 1993).

In this case, Mr. Spitale only was appointed to represent Mrs. Kannell in the criminal proceedings against Harvey and Mrs. Kannell. In no way did Mr. Spitale ever represent Harvey or enter into privity of contract with Harvey. Mr. Spitale only owed a duty to Mrs. Kannell as her attorney in the criminal proceedings. Thus, any claim of negligence or legal malpractice by Harvey against Mr. Spitale must be dismissed with prejudice.

5. **Any Claim for Negligence or Legal Malpractice must be Dismissed as Mr. Spitale is Protected by Judgmental Immunity.**

Even if it was determined that Mr. Spitale owed any type of duty to Harvey, Harvey would be unable to prevail under a negligence or legal malpractice claim against Mr. Spitale, as Mr. Spitale, at all times relevant, acted in good faith and with a reasonable degree of care in defending Mrs. Kannell's criminal case and since he only had a duty to Mrs. Kannell he could not have any duty to advocate on his behalf.

It is well-settled in Florida "that an attorney may be held liable for damages incurred by a client based on the attorney's failure to act with a reasonable degree of care, skill, and dispatch." *See Air Turbine Tech., Inc. v. Quarles & Brady, LLC*, 165 So. 3d 816, 822 (Fla. 4th DCA 2015); *Crosby v. Jones*, 705 So. 2d 1356, 1358 (Fla. 1998).

However, an attorney does not act "as an insurer of the outcome of a case." *Id.* Accordingly, "[g]ood faith tactical decisions or decisions made on a fairly debatable point of law are generally not actionable under the rule of judgmental immunity." *Id.* This rule "is premised on the understanding that an attorney, who acts in good faith and makes a diligent inquiry into an area of law, should not be held liable for providing advice or taking action in an unsettled area of law." *Id.*

An attorney will prevail on a claim of judgmental immunity if (1) the legal authority supporting the asserted cause of action was 'fairly debatable' or 'unsettled,' and (2) that she or he acted in good faith and made a diligent inquiry into the unsettled area of law." *See Air Turbine Tech., Inc.,* 165 So. 3d 816 at 822 (Fla. 4th DCA 2015); *See also Haisfield v. Fleming, Haile & Shaw, P.A.*, 819 So. 2d 182, 185 (Fla. 4th DCA 2002). An issue of law is unsettled if it "is one that has not yet been determined by the state's court of last resort and on which reasonable doubt may be entertained by well-reasoned lawyers." *Id.* Whether "legal authority is 'unsettled' is a question of law, not an issue of fact." *Id.* Judgmental immunity is a flexible doctrine that protects attorneys who act in good faith from claims brought solely with the clarity of hindsight. Thus, any claim of negligence or legal malpractice by Harvey against Mr. Spitale must be dismissed with prejudice.

6. **Harvey Will Not Prevail as a Third Party Beneficiary For Purposes of a Negligence or Legal Malpractice Claim against Mr. Spitale.**

Harvey will also be unable to assert that he was a third party beneficiary resulting from Mr. Spitale's representation of Mrs. Kannell during the criminal proceedings. Florida only allows parties to make third party beneficiary arguments for legal malpractice claims under a very limited

set of circumstances, particularly where the plaintiff can show it was the intent of the client engaging the lawyer to benefit a third party. *See Noyes v. Universal Underwriters Ins. Co.*, 3 F. Supp. 3d 1356, 1361-62 (M.D. Fla. 2014).  In addition, an intent to benefit a third party which must be inferred from contradicted circumstantial evidence cannot be characterized as "apparent," "direct," or "primary".  *See Hewko v. Genovese*, 739 So. 2d 1189, 1192 (Fla. 4th DCA 1999). Instead, the evidence must present express intent to benefit the third party.  Id.

As mentioned previously Mr. Spitale was appointed by the court to only represent Mrs. Kannell during the criminal proceedings against Mrs. Kannell.  In no way did Mr. Spitale represent Harvey, nor were they ever in privity of contract with each other. It is immaterial that Harvey and Mrs. Kannell's interests may have been aligned resulting in Mr. Spitale's legal services consequently potentially benefiting Harvey as well. Both, Mr. Spitale and Mrs. Kannell never expressly intended for Mr. Spitale's legal representation to directly benefit Harvey, as Mr. Spitale was appointed only to serve his client, Mrs. Kannell.  In fact the only reason different counsels are appointed by the court to represent co-defendants is because there is an *inherent conflict of interest between two defendants charged jointly in one indictment*. An attorney has a duty to do what is in the best interest of their client even if it prejudices the other client and to assert defenses that apply to their client and not the other client. Thus, in no way was Harvey a third party beneficiary according to the legal standard set forth in order for an individual to pursue a legal malpractice claim against an attorney.

### 4.  Public Defender Jan Smith

#### a.  *Summary of Allegations Specific to Public Defender Smith*

Jan Smith is employed by the Federal Public Defender's Office.  On October 18, 2011, Mr. Smith was appointed to represent Harvey in his criminal case.  The Complaint asserts a single count against Mr. Smith, a RICO conspiracy.

#### b.  *Legal Analysis of Claims Against Public Defender Smith*

##### 1.  A *Bivens* claim cannot be pursued against Mr. Smith.

Mr. Smith is an assistant federal public defender, who the Court originally appointed to represent Harvey in his pending criminal action.  To state a claim under *Bivens*, Harvey must allege that a federal officer acted under federal law to deprive plaintiff of a constitutional right. *Bivens*, 403 U.S. at 389.  Mr. Smith is not a federal officer acting under color of federal law for purposes

of a Bivens action. *See Polk Cty. v. Dodson*, 454 U.S. 312, 320-21 (1981) (concluding that a public defender does not act under color of state law for purposes of § 1983). To the extent that Harvey's claim could be understood to assert a civil rights suit against Mr. Smith, it is also barred because "[f]ederal public defenders are also immune from civil rights suits arising out of alleged malpractice." *Rogozinski v. Spaulding*, 330 F. App'x 170, 171 (11th Cir. 2009) (alteration added; citations omitted). Accordingly, to the extent Harvey seeks to assert a *Bivens* claim against Mr. Smith, the Court should dismiss it.

### 2. The claims against Mr. Smith must be dismissed based upon sovereign immunity.

The concept of sovereign immunity has been characterized as an "axiom of our jurisprudence" by the Supreme Court. It rests upon the idea that the United States cannot be sued unless it has specifically consented. *Price v. United States*, 174 U.S. 373, 375-76 (1899). The presence of such consent is a "prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). For an action to be permitted to proceed against the United States or any agency thereof, a waiver of sovereign immunity must be unequivocally expressed by Congress, and any conditions Congress attaches to a waiver of sovereign immunity "must be strictly observed, and exceptions thereto are not to be lightly implied." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). This Court must therefore examine if there has been any consent by the United States that its agency, the Federal Public Defender's Office or that agency's employee Mr. Smith, may be sued as a result of a waiver of sovereign immunity.

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and 28 U.S.C. §§ 2671-2680, was enacted by Congress to allow recovery for certain tort claimants who are the victims of governmental negligence where such claims would normally be barred by sovereign immunity. *See e.g. Indian Towing Co. v. United States*, 350 U.S. 61, 68-69 (1955) The FTCA permits the exclusive remedy of money damages for suits involving the tortuous conduct, wrongful acts, or omissions of the employees or agents of the United States. 28 U.S.C. §2679(a) and (b). Determinative here is the fact that the FTCA's waiver of sovereign immunity in tort actions is "subject to certain exceptions." *S.H. v. United States*, 853 F.3d 1056, 1059 (9th Cir. 2017). These exceptions "must be strictly construed in favor of the United States." *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000) (*see also Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999)). The Supreme Court has cautioned against finding implied waivers of sovereign immunity

and stated that such waivers must not be enlarged "beyond what the language requires." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685-686 (1983). Harvey must show that Congress consented to subject the United States government to suit pursuant to the FTCA under circumstances such as exist in the present case, and thus establish that this court has subject matter jurisdiction to hear the present case.

The Criminal Justice Act ("CJA") directs each United States District Court, with the approval of the judicial council of the circuit, to put in operation throughout the district a plan for furnishing representation for any eligible person financially unable to obtain adequate representation. 18 U.S.C. § 3006A(a). Under the CJA, a district may establish a defender organization, including a federal public defender organization. Id., and § 3006A(g)(1) & 2(A). The plan establishing the Office of the Federal Public Defender for the Southern District of Florida was implemented under 18 U.S.C. § 3006A. With respect to Mr. Smith, a Federal Public Defender, 28 U.S.C. §2671 explains that an "employee of the government" is defined as "...(2) any officer or employee of a Federal public defender organization, except when such officer or employee performs professional services in the course of providing representation under section 3006A of title 18." This exception was specifically added to the definition by amendment in 2000. Mr. Smith falls within the definition of "employee of the government" (who is subject to a waiver of sovereign immunity under the FTCA) *unless* the exception applies because he was performing professional services pursuant to representation under section 3006A.

While Congress has waived sovereign immunity as to certain federal entities "from the times of their inception by including in the enabling legislation provisions that they may sue and be sued," *Loeffler v. Frank*, 486 U.S. 549, 554 (1988), the Federal Public Defender Organization and its employees performing professional services is not one such entity, as no such "sue-and-be-sued" provision applies to it. The Court appointed Mr. Smith as counsel to Plaintiff was made pursuant to 18 U.S.C. §3006A. 28 U.S.C. §2671 specifically exempts "employees of a Federal public defender organization" providing "professional service" pursuant to representation under §3006A. Even if true, the Complaint's allegations that Mr. Smith refused to challenge the government's action in court were clearly undertaken during his representation of Mr. Harvey pursuant to §3006A, and thus Mr. Smith is exempt from §2671's definition of which would subject him to a waiver of sovereign immunity. Because the FTCA's waiver (or consent to permit suit) is inapplicable to Mr. Smith, then the United States has not waived its sovereign immunity.

Therefore, Plaintiff has not shown that sovereign immunity has been waived, and thus has not carried his burden of proving this action lies within the limited jurisdiction of this Court.

### 3.   The Complaint fails to allege a RICO claim against Mr. Smith.

In the most conclusory terms, Harvey asserts that Mr. Smith entered into a RICO conspiracy by asserting that he would not go against the Government. On its face this allegation is not plausible and in unsupported by any specific factual allegations. Harvey's allegations do not come close to stating a claim against Mr. Smith, and they suffer from a number of flaws, each of which requires dismissal.

### i.   The Complaint fails to allege causation.

There are no allegations related to causation. Harvey fails to allege how Mr. Smith's alleged inaction could have caused Harvey to be deprived of his property, when the depravation occurred prior to Mr. Smith's alleged conduct. Harvey must show that Mr. Smith's predicate acts (more below on the lack of any alleged predicate acts) were the "but-for" and proximate cause of his alleged injury. *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 266-67 (1992); *see also Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 (9th Cir. 2002) ("The key task is to determine whether this injury was 'by reason of' the [the defendants'] alleged violations, a requirement the Supreme Court has interpreted to encompass proximate as well as factual causation."). To prove that an injury is proximately caused by a RICO violation, Harvey must demonstrate that there is "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268. But Harvey is precluded from complaining that there was any violation of his rights by the Government's seizure of his property after the sale of the storage facility because the trial court concluded (and was affirmed on direct appeal) that Harvey's constitutional rights were *not* violated by the Government's collection of the items from the storage shed after the their sale to a private individual who then gave them to the Government. The question the Eleventh Circuit indicated remained open in *Harvey II* – that is the denial of access to the storage shed before its sale – occurred *prior to* the conduct Harvey alleges gives rise to a RICO claim against Mr. Smith. Mr. Smith's conduct could not have been the cause of Harvey's perceived injury.

### ii.   The Complaint fails to plausibly allege Mr. Smith joined a conspiracy.

The Complaint also fails because it lacks a single allegation of fact to supports an inference that Mr. Smith joined a conspiracy or, phrased differently, that he agreed to conduct the affairs of any enterprise through a pattern of racketeering activity.   The defining element of any conspiracy claim (RICO or otherwise) is that a defendant "agreed to the overall objective of the violation." *United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 13, 19 (D.D.C. 2004).  Thus, to state such a claim, "a plaintiff must set forth more than just conclusory allegations of an agreement." *See McCreary v. Heath*, No. Civ. A., 04-0623 (PLF), 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005) (dismissing conspiracy claim).  He must set forth specific allegations of fact – such as "events, conversations, or documents" – that indicate that each defendant joined in the conspiratorial agreement. *Id; see also Doe I v. Israel*, 400 F. Supp. 2d 86, 119-120 (D.D.C. 2005) (dismissing RICO conspiracy claim, holding that "[t]he complaint's broad and vague assertions simply recite legal conclusions and regurgitate the RICO elements without directing the Court to specific facts," including "specific facts" that support the allegation of a "subjective agreement"); *Brady v. Livengood*, 360 F. Supp. 2d 94, 104 (2004) (dismissing conspiracy claim, holding that "[a] plaintiff must set forth more than conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss."); *Graves v. United States*, 961 F. Supp. 314, 321 (D.D.C. 1997) (dismissing conspiracy claim, holding that "plaintiff has failed to allege any facts showing the existence or establishment of an agreement" other than a "conclusory allegation" that defendants "colluded" together).

Harvey fails to allege any facts that support his conclusory assertion that that Mr. Smith joined the conspiratorial agreement which the Complaint seeks (and fails) to allege.  Harvey does not allege that Mr. Smith attended any meetings about the alleged conspiracy; participated in any conversations about the alleged conspiracy; there is no reference to any documents that connect Mr. Smith to an alleged conspiracy; and, there are no facts could possibly support an inference that Mr. Smith agreed to the conspiracy Mr. Harvey seeks to allege.  It is not enough to merely parrot the words "conspired" and "agreed." *See McCreary*, 2005 WL 3276257, at *5; *Doe I*, 400 F. Supp. 2d at 119-120; *Brady*, 360 F. Supp. 2d at 104; *Graves*, 961 F. Supp. at 321.  Rule 8 requires supporting allegations of fact, and plaintiffs allege none against Mr. Smith.  For this reason, Harvey's RICO allegations fail to state a claim against Mr. Smith and the Complaint should be dismissed.

### iii.  The Complaint fails to allege predicate RICO violations.

Another failing of the Complaint is the lack of any allegations that would establish an enterprise effecting interstate commerce. "RICO makes it unlawful 'to conduct or participate, directly or indirectly, in the conduct of [an] enterprise [that affects interstate commerce] through a pattern of racketeering activity.'" *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 948 (11th Cir. 1997) (quoting 18 U.S.C. § 1962(c)). "The 'pattern of racketeering activity' element requires that a civil RICO plaintiff establish 'at least two acts of racketeering activity.'" *Id.* (quoting 18 U.S.C. § 1961(5)). "Congress has defined 'racketeering activity' to mean the violation of any of the criminal statutes listed in § 1961(1)." *Id.* "Section 1961 requires that a RICO plaintiff establish that a defendant could be convicted for violating any of its predicate statutes." *Id.* at 948-49 (*citing Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 486-88 (1985); 18 U.S.C. § 1961 (defining racketeering activity to include conduct that is "chargeable" or "indictable" and "offenses" that are "punishable" under various criminal statutes)). "Therefore, in order to survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts." *Id.* at 949 *(citing Cent. Distribs. of Beer, Inc. v. Conn*, 5 F.3d 181, 183-84 (6th Cir. 1993) (affirming grant of summary judgment), *cert. denied*, 512 U.S. 1207 (1994)). The Complaint fails to specify any predicate acts that were committed by Mr. Smith or the other defendants which would qualify as a predicate act under the RICO statute.

Plaintiff alleges in his Complaint that Defendants are liable for conspiracy pursuant to 18 U.S.C. § 1962(d). "[A] party may be liable for RICO conspiracy even if it is not liable for the substantive RICO offense." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004). However, a plaintiff must "allege an illegal agreement to violate a substantive provision of the RICO statute." *Id.* "To be guilty of conspiracy, . . . parties must have agreed to commit an act that is itself illegal—parties cannot be found guilty of conspiring to commit an act that is not itself against the law." *Id.* (*quoting United States v. Vaghela*, 169 F.3d 729, 732 (11th Cir. 1999)); *see also Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1199 (11th Cir. 2004) ("If the underlying cause of action is not viable, the conspiracy claim must also fail." (internal quotation marks and citation omitted)). Harvey does not include any facts in his Complaint from which this Court could plausibly infer an agreement among the parties to commit a RICO violation.

### iv.  The Complaint fails to allege a RICO enterprise.

RICO defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An enterprise "must have a common or shared purpose, some continuity of personnel, and an ascertainable structure distinct from the pattern of racketeering." *Asa-Brandt, Inc.*, 344 F.3d at 752 (*citing Handeen*, 112 F.3d 1). Here, Mr. Smith was appointed by the Court to represent Harvey and it is implausible that an enterprise could be formed (the Complaint lacks any allegation that one was) to deprive Harvey of his property rights, which involved Mr. Smith. The mere association of the Defendants in Harvey's criminal case – on the one hand to prosecute Harvey and on the one hand and defend him – does not amount to an enterprise. Other than insufficient conclusory legal allegations untethered to any plausible facts, Mr. Harvey does not allege in his Complaint that Defendants have a common or shared purpose, continuity of personnel, and an ascertainable structure distinct from any alleged pattern of racketeering. The failure to allege any such allegations is fatal to the Complaint.

### v. The Complaint fails to allege a pattern of racketeering activity.

Harvey fails to plead – and in fact cannot plead – that there was a pattern of racketeering activity. To establish a pattern of racketeering activity, Harvey must establish that the predicate acts were related and that they amount to a threat of continued criminal activity. *United States v. Browne*, 505 F.3d 1229, 1257 (11th Cir. 2007); *see also Jackson v. Bellsouth Telecommunications*, 372 F.3d 1250, 1265 (11th Cir. 2004). "The continuity element of a pattern of racketeering activity is crucial to a valid RICO claim in order to ensure that the crime alleged is the sort of offense that RICO is designed to address-one that is part of a pattern of ongoing, continuing criminality." *Jackson*, 372 F.3d at 1265. Here, there is no allegation supporting the finding of an ongoing conspiracy, and Harvey fails to support any finding that conspiracy of a closed period existed. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a *substantial* period of time. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with longterm criminal conduct." *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989).

Harvey does not carry his burden to plead a viable claim asserting a pattern of racketeering activity. Harvey was arrested on October 6, 2011 (*United States v. Harvey*, Southern District of

Florida Case Number 11-20701 (DE8), 8 months and 2 days later, Harvey was convicted after a trial on June 8, 2012 (Id., (DE109)).   Regarding the substantial period of time component, the Supreme Court has instructed that "[p]redicate acts extending over a few weeks or months" do not meet the requirement of a substantial period of time.   Indeed, the Eleventh Circuit has held that nine months was too short to constitute a substantial period of time. *Jackson*, 372 F.3d at 1265-66 (periods of twenty months or less held to have been insufficient to constitute a substantial period of time).

All of the acts alleged by Harvey were targeted (according to him) at the discrete goal of gaining control over his personal effects.   This Circuit's precedent supports finding a lack of close-ended continuity when only one scheme is used to accomplish a discrete goal.   The court has explained that "in cases like this one, where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." *Jackson*, 372 F.3d at 1267.   According to Harvey, the defendants engaged in one scheme: to deprive him of his personal property.   This is insufficient to allege a RICO conspiracy because it fails to allege a pattern of racketeering activity.

## 5.   Official Grand Jury Court Reporter Elaine Somma

### a.   *Summary of Allegations Specific to Court Reporter Somma*

The Plaintiff's factual allegations against Court Reporter Somma are contained in a single paragraph:

> 25. Elaine Somma was the court reporter at Harvey and Kannell's grand jury hearing.   In June 2012, at Harvey and Kannell's trial, Fitzgerald was asked by the Court what happened to the grand jury transcripts relating to the storage unit. (please see trial transcripts).   Fitzgerald told the Court that Somma told him that the transcripts were destroyed even though the system she uses is full of redundancies. Fitzgerald claims he never received the transcripts.   Did Ms. Somma destroy them? Did she lose them?   Is Fitzgerald lying about them being destroyed?   Ms. Somma has the answers as to whether she aided and abetted the schemes or is she an innocent bystander being lied upon.

These allegations fall far short of the applicable heightened pleading standard.   Instead of alleging specifically what Somma is alleged to have done to have violated RICO, the Amended Complaint asks a series of questions: "Did Ms. Somma destroy [the grand jury transcripts]? Did she lose them?   Is Fitzgerald lying about them being destroyed?" *Amd. Comp.* ¶ 25.   Questions

are not affirmative allegations of misconduct of any kind, let alone the sort of intentionally unlawful misconduct required to establish a claim under RICO.

### b. *Legal Analysis of Claims Against Somma*

#### 1. The Claim Against Court Reporter Somma is Barred by Issue Preclusion.

This is not the first time the Plaintiff has alleged his rights were violated by the loss of his grand jury transcript.  In his criminal trial and on appeal of his conviction, he argued that the government violated his right to due process under the Fifth Amendment by failing "to produce a transcript of specific portions of Postal Inspector Claudia Angel's testimony."   *Harvey v. U.S.,* Case No. 12-15207 (Nov. 18, 2013).   The Eleventh Circuit rejected this argument, finding that "a transcript was never produced *because the trial reporter's recording equipment malfunctioned*." (emphasis added).  The court held that "[a]lthough grand jury 'proceedings must be recorded by a court reporter or by a suitable recording', the 'validity of a prosecution is not affected by the *unintentional* failure to make a recording.' *See* Fed R. Crim. P. 6(e)(1)." (emphasis supplied). These findings preclude the Plaintiff from pursuing a claim of intentional misconduct under RICO against Somma.

In remanding this matter from a prior appeal, the Eleventh Circuit described the doctrine of issue preclusion as follows:

> Issue preclusion prevents a party from litigating an issue in a later action if that issue was fully litigated in an earlier action. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. _, 135 S. Ct. 1293, 1302-03 (2015). For issue preclusion to apply, (l) the issue in the case must be identical to the one previously litigated; (2) the issue must have been 'actually litigated' in the earlier lawsuit; (3) 'the determination of the issue in the prior suit was a necessary part of the judgment in that action'; and (4) 'the parties are the same or in privity with each other and the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.' *Baloco v. Drummond Co.*, 767 F.3d 1229, 1251 (l1th Cir. 2014). A party need only identify 'one material differentiating fact that would alter the legal inquiry' to overcome issue preclusion. *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (l lth Cir. 2003).

The court ultimately held that a Fourth Amendment claim against the government that had not been raised in the Plaintiff's criminal trial and appeal was not precluded.  The Court did not

consider the issue of whether the claim against Somma was precluded, as she had not yet been served, was not a party to the prior appeal and did not have the opportunity to raise the issue.

Unlike the Fourth Amendment claim the Court determined was not precluded because it had not been raised in the criminal trial, the claim against Somma *was* raised and resolved in the criminal trial, and is therefore precluded. Specifically, the issue of whether Somma's loss of the transcript was inadvertent or intentional was considered and necessarily resolved. As the Eleventh Circuit stated, the grand jury transcript was never produced "because the trial reporter's recording equipment malfunctioned." The court held that "the unintentional failure to make a recording" did not violate the Plaintiff's rights.

These findings and conclusions are binding on the Plaintiff and preclude any possible claim he may have against Somma. They are binding because the issues of (a) whether the loss of the transcript was intentional or inadvertent; and (b) whether the loss of the transcript adversely impacted his ability to defend against the criminal charges, are identical to the issues raised in this action. These issues were "actually litigated" in the criminal appeal, their determination was a "necessary part" of the prior judgment, and the Plaintiff had a "full and fair opportunity" to litigate them. The judicial determination that the failure to produce the transcript was a result of an equipment malfunction and "unintentional" was a "necessary part of the prior judgment" because a different analysis would apply and a different result might obtain if the loss of the transcript had been intentional. The intentional destruction of evidence is, of course, quite different than the loss of evidence through inadvertence.

The Eleventh Circuit's findings preclude this action because RICO requires proof of intentional misconduct. *See. e.g., Funding Metrics, LLC v. Decision One Debt Relief LLC*, CASE NO.: 18-81061-CIV-Bloom/Reinhart, at *5-7 (S.D. Fla. Feb. 22, 2019). As this court has explained,

> In order to state a civil RICO claim under § 1962(c), the plaintiff must show that the defendant "'knowingly committed, or aided and abetted in committing, at least two acts of racketeering activity." 11th Circuit Pattern Jury Instruction (Criminal) O75.1. '**Knowingly' means 'that an act was done voluntarily and intentionally and not because of a mistake or by accident.**' 11th Cir. Pattern Jury Instruction (Criminal) B9.1A. To 'aid and abet' a person must **intentionally** associate with, or participate in, a crime as a willful participant. Merely being present or knowing about the crime is insufficient. 11th Cir. Pattern Jury Instruction (Criminal) S7. **To act**

> **"willfully" means 'that the act was committed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law**.' 11th Cir. Pattern Jury Instruction (Criminal) B9.1A. (emphasis supplied).

The Eleventh Circuit's finding that the loss of the transcript was the result of a "recording equipment malfunction" and "unintentional" precludes the Plaintiff from establishing an essential element of any RICO claim against Somma- that she acted "knowingly and willfully", with "bad purpose" and "with the intent to do something the law forbids."

### 2. The Complaint Fails to State a Claim Against Court Reporter Somma for Violation of RICO.

As explained above, the Amd. Comp. fails to show that any of the defendants were part of an ongoing criminal enterprise in violation of RICO.  The Amd. Comp. fails to state a RICO claim against Somma for the following additional reasons:

### 3. The Complaint Does Not Allege That Somma Had Any Role in Managing or Operating a Racketeering Enterprise.

To be held liable under RICO, a defendant must have some role in managing or operating the alleged enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) ("RICO liability is not limited to those with primary responsibility for the enterprise's affairs [nor is it] limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required.") (emphasis in original).  Whatever the "enterprise" the Plaintiff is alleging exists, he does not allege that Somma played any part in directing its affairs. All Somma is alleged to have done is to lose a transcript.  Even assuming she lost it at the prosecutor's direction, as the Plaintiff seems to suggest, it would not make her a manager or director of the alleged enterprise, merely a subordinate player.  That is not enough to hold her liable under RICO.

### 4. The Complaint Does Not Allege Somma Engaged in Any Predicate Act of "Racketeering."

Negligent acts are not "predicate acts." *See, e.g., Blu-J, Inc. v. Kemper C.P.A. Group*, 916 F.2d 637 (11th Cir. 1990) ("Fraudulent intent is also necessary to establish mail or wire fraud, which were the predicate acts alleged here for the civil RICO count."); *Snow Ingredients, Inc. v.*

*SnoWizard, Inc.,* 833 F.3d 512 (5th Cir. 2016) ("[A] Civil-RICO conspiracy . . . cannot be premised on negligence. It requires an actual agreement between conspirators—they must specifically intend the illegal conduct."); *United States v. Ganji*, 880 F.3d 760 (5th Cir. 2018) ("One cannot negligently enter into a conspiracy."); *In re Cascade Intern. Securities Litig.*, 840 F. Supp. 1558, 1583 (S.D. Fla. 1993) ("the allegations as to K S fail to allege facts to evince that they shared the principals' intent to commit securities fraud or mail and wire fraud and, at most, allege aroused suspicions or simple negligence. . . . Thus, the Complaint fails to allege a cause of action for RICO aider and abettor liability."). As noted above, the Eleventh Circuit has already determined that Court Reporter Somma's loss of the transcript in this case was "unintentional," amounting at most to negligence.

### 5. The Complaint Fails to Show that Somma's Alleged Conduct Proximately Caused the Plaintiff's Alleged Injuries.

In order **"**to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 130 S.Ct. 983, 989, 175 L. Ed. 2d 943 (2010), quoting from, *Holmes v. Securities Investor Trust Protection Corp.,* 503 U.S. 258, 268 (1992). "Proximate cause for RICO purposes . . . should be evaluated in light of its common-law foundations; proximate cause thus requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id*. A complaint fails to state a valid RICO claim if it does not show proximate cause. *Id.*, 130 S.Ct. at 989.

The Plaintiff has not alleged, and is in fact legally foreclosed from showing, that Somma's alleged act, the loss of a transcript, caused him any cognizable harm. The Eleventh Circuit has already held that the "validity of [his] prosecution [was] ***not*** affected by the unintentional failure to make a recording" (emphasis supplied). The Court specifically rejected the Plaintiff's argument that he was "'hampered' in [his] ability to cross-examine Inspector Angel [because] the Sixth Amendment entitles a defendant only to an opportunity for cross examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish." Simply stated, the loss of the transcript is not what proximately caused the Plaintiff's conviction.

### 6. The Complaint Against Somma is Barred By Qualified Immunity

Court reporters are entitled to qualified immunity from claims resulting from their official actions. *Antoine v. Byers Anderson, Inc.*, 508 U.S. 429, 432 (1993) (holding that court reporters are not entitled to absolute immunity, but may be entitled to qualified immunity); *Rheuark v. Shaw*, 628 F.2d 297 (5th Cir. 1980) ) ("official court reporters are entitled to qualified immunity under § 1983"). The Plaintiff has failed to plead his RICO claim with sufficient specificity to deprive Somma of her immunity. While transcribing a grand jury proceeding, Somma was acting in her official capacity as a federal court reporter. Accordingly, the burden is on the Plaintiff to show that existing case law has been "developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what [she was] doing [losing a transcript] violates a federal law."

For the reasons explained above, the Plaintiff cannot show that Somma violated any law, let alone clearly established law. There simply is no case law from a relevant court that makes clear that the inadvertent loss of a transcript violates the law. To the contrary, such negligent acts do <u>not</u> violate RICO, particularly where, as here, they do not proximately cause any legally cognizable harm. At worst, the complaint alleges that Somma is guilty of malpractice, and as this Court has already noted such claims are barred by immunity. *Order Consolidating Cases*, Docket No. 66 at 3, Par. ii, citing *Rogozinski v. Spaulding*, 330 F.App'x 170, 171 (11th Cir. 2009); *accord, Burnett v. Denman*, No. 09-40666, Summary Calendar (5th. Cir. 3/8/2010) ("Court clerks 'have absolute immunity . . . for damages arising from acts they are specifically required to do under court order or at a judge's discretion'" and "qualified immunity for those routine duties not explicitly commanded by either court decree or judicial instruction."), quoting, *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981). Accordingly, Defendant Somma is entitled to qualified immunity and the claim against her must be dismissed.

## CONCLUSION

WHEREFORE, Defendants Angel, Fitzgerald, Spitale, Smith and Somma respectfully request that the Complaint be dismissed with prejudice.

Respectfully Submitted,

KAUFMAN DOLOWICH & VOLUCK LLP

*Attorneys for Defendant Leonardo Spitale, Jr.*
One Financial Plaza
100 S.E. Third Avenue, Suite 1500

Fort Lauderdale, FL 33394
Tel:  (954) 302-2498

*/s/ Avery A. Dial*
Avery A. Dial
Fla. Bar No. 732036
adial@kdvlaw.com
Kevin D. Tragesser
Fla. Bar No. 1011458
ktragesser@kdvlaw.com


s/ Lee Alan Kraftchick
Lee Alan Kraftchick
Fla. Bar No. 313726
5350 SW 76 Street
Miami, FL 33143
786-510-6140
Email: lkraftchick@gmail.com

Counsel for Elaine Somma

s/ Marshall Dore Louis

Marshall Dore Louis
Florida Bar No. 512680
BOIES SCHILLER FLEXNER LLP
100 S.E. Second Street, Suite 2800
Miami, FL 33131
TEL: (305) 539-8400
FAX: (305) 539-1307
E-MAIL: mlouis@bsfllp.com

Counsel for Jan Smith

s/ Karin D. Wherry

Karin D. Wherry
Fla. Bar No. 509530
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
305-961-9016
Email: karin.wherry@usdoj.gov

Counsel for the United States
Counsel for Tom Watts-Fitzgerald
Counsel for Claudia Angel

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on November 20, 2019, I filed the foregoing document with the Clerk of the Court.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

s/ Marshall Dore Louis
_____
Marshall Dore Louis
Florida Bar No. 512680
BOIES SCHILLER FLEXNER LLP
100 S.E. Second Street, Suite 2800
Miami, FL 33131
TEL: (305) 539-8400
FAX: (305) 539-1307
E-MAIL: mlouis@bsfllp.com

<u>**SERVICE LIST**</u>

**Joseph Harvey**
95553-004
Coleman Low
Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 1031
Coleman, FL 33521

PRO SE

(Via US Mail)

**Karin D. Wherry**
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
Email: karin.wherry@usdoj.gov

**Avery A. Dial**
Kaufman Dolowich & Voluck
One Southeast 3rd Avenue
Suite 1500
Fort Lauderdale, FL 33394
Email: adial@kdvlaw.com

**Lee Alan Kraftchick**
5350 SW 76 Street
Miami, FL 33143
Email: lkraftchick@gmail.com

(Via CM/ECF)